

June 4, 2026

Hon. Pamela K. Chen, U.S.D.J.
225 Cadman Plaza East
Courtroom 4F
Brooklyn, New York 11201

By Electronic Filing.

> **Re:**  **Shelby v. United States of America**, 23-cv-4315

Dear Judge Chen:

My firm represents Plaintiff in the case above.  I write pursuant to the Court Individual Practices and Rules § 3(A) to respond to Defendant's premotion conference request at ECF No. 34.

As set out below, the proposed motion is uncommonly weak.  Indeed, despite extensive discussion with Judge Eichenholtz in which he encouraged Defendant to review and carefully consider *Scott v Quay*, 2020 US Dist LEXIS 216990, at *39 (EDNY Nov. 16, 2020), the letter does not even cite the case.  Given the lack of facial merit in the motion, Plaintiff believes the Court should deem the motion made and deny it.[1]

**Discussion**

### I.  The Complaint here offers a classic "negligent guard" fact pattern.

As set out in the complaint, while Defendant was unconstitutionally housing Plaintiff in a men's facility,[2] the habeas court then addressing the claim specifically asked government counsel to make sure "Plaintiff would be safe being housed with men, at MDC, while the case proceeded." ECF No. 1 ¶ 30.  Despite "fil[ing] declarations stating that BOP reviewed the history of any person assigned to share a cell with Plaintiff," Defendant housed Plaintiff with someone who had literally been "convicted of holding a 20 year old cellmate at razor[-]point, forcing that cellmate to ingest drugs, and raping him."  ECF No. 1 ¶¶ 30-40.

Plaintiff found out about that history and tried to raise the alarm.  *Id.* ¶¶ 39-47.  Defendant did nothing.  Over the next *75 days*, Plaintiff was daily and repeatedly orally and anally raped, beaten, and drugged, all without any intervention from Defendant.  *Id.* ¶¶ 48-54.

---

[1] Plaintiff also notes she may amend as of right upon seeing the full motion, depending on what facts it asserts are absent — but the three page version does not provide sufficient detail that Plaintiff is willing to use up her amendment as of right at this stage.

[2] *See generally JJS v W.S. Pliler*, 2022 US Dist LEXIS 146318 (SDNY Aug. 3, 2022), *report and rec. adopted* 2022 U.S. Dist. LEXIS 199132 (SDNY Nov. 1, 2022) ("*Shelby I*")



While Defendant says Plaintiff "cites no statute, regulation or directive mandating that Plaintiff not be housed where the BOP assigned her," that misses the point — and in declaring "the Negligent Guard Theory ("NGT") is unavailing here because there are no alleged facts to establish that the BOP contemporaneously **could have known** about the alleged attacks" (ECF No. 34 at 2 (emphasis added)), Defendant does not cite a single case for that proposition.

As *Scott* explains directly, a "'lazy or careless failure to perform his or her discretionary duties' are negligent acts that 'neither involve an element of judgment or choice within the meaning of *Gaubert* nor are grounded in considerations of governmental policy." *Scott,* 2020 US Dist LEXIS 216990, at *39. There, allegations of several months of power and heat issues provided precisely how the BOP "could have known" (ECF No. 34 at 2) of the risks and therefore provided a basis to show it was laziness or carelessness — not policy — that led to the injuries. *Scott,* 2020 US Dist LEXIS 216990, at *40-42. The same is true here. Perhaps it was not laziness or carelessness on the **first** day — or even the first weeks — when Plaintiff was being brutally raped daily. But a prison is a secure facility with constant monitoring, and Defendant **specifically reported to a Federal Judge it was carefully monitoring Plaintiff.** It could only be laziness or carelessness that prevented Defendant from learning of the daily rapes and beatings — or laziness and carelessness not "grounded in considerations of governmental policy" that lead to Defendant knowing of the rapes and doing nothing. How could allowing that daily rape and violence be the result of anything other than "careless or inattentive" conduct? *Scott,* 2020 US Dist LEXIS 216990, at *43.[3]

To be sure, at a later stage of the case, "[i]t is conceivable that the United States could establish that MDC officials engaged in the conduct and made the decisions challenged by plaintiffs based upon considerations of public policy." *Scott*, 2020 US Dist LEXIS 216990, at *42. But that showing cannot be made on a motion to dismiss: In her allegations, Plaintiff has "presented facts that the Court [should] conclude[] support a finding that [Defendant's] decisions were careless or inattentive and not rooted in policy considerations." *Scott,* 2020 US Dist LEXIS 216990, at *43.

## II. Plaintiff's Placement was Unconstitutional and Therefore Non-Discretionary.

Also raised in front of Judge Eichenholtz was the basic fact that the United States likely cannot — having fully and fairly litigated this issue and lost — assert Plaintiff's placement was constitutional. And despite notice of this defect in its theory on this motion, Defendant does not even address it in passing.

It is well-settled that "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply." *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000). This Court "must follow the precedent of this Circuit and holds that the DFE is not applicable when a plaintiff plausibly alleges that a federal employee engaged in unconstitutional conduct." *M.Q. v United States*, 776 F Supp 3d 180, 192 (SDNY 2025).

It is already settled that "BOP's refusal to transfer [Plaintiff] to a women's facility violate[d] her Eighth Amendment rights." *Shelby I*, 2022 US Dist LEXIS 146318, at *66. Since BOP lacked

---

[3] And the same reasoning also dooms Defendant's Point IV: Again, on day 1, things might not have been predictable. But by day 75, they were.



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



discretion to violate the Eighth Amendment, by definition, it cannot defend itself with the discretionary function exception.

### III. Defendant's Arguments About Damages and Scope are Misguided.

Defendant next makes several arguments about the scope of claims and damages, but these are untethered from the law and the SF-95. At bottom, this appears to largely conflate an attempt to seek "any sum in excess of the amount of the claim presented to the federal agency" and damages anticipated within the amount, but a diagnosis that could not have been.

For example, Defendant claims that even though the repeated rapes caused so much damage that Plaintiff "is no longer a surgical candidate for a vaginoplasty," it did not have sufficient notice of these damages. ECF No. 34 at 2. But it never explains how these damages — not known at the time of the SF-95 because of Defendants' delays in sending her to a surgeon — would be barred by 28 U.S.C. 2675, since there is not claim for "any sum in excess of the amount of the claim presented." More, the § 2675(b) exception would apply anyway. "[C]hanges in a medical diagnosis can, in the proper circumstances, satisfy the § 2675(b) exceptions." *Castelluccio v United States*, 2019 US Dist LEXIS 225839, at *12 (NDNY Dec. 20, 2019).

In short, Plaintiff could not have foreseen the ***specific***, extreme nature of the harm until she spoke to a surgeon (whom Defendant was actively stopping delaying her from seeing) and the specific medical consequences of the 75 days of brutal rapes were not known until the time to file the SF-95 expired. But the SF-95 included a massive demand specifically to account for the then-unknowable extent of damages. It also includes as part of the damages that though "[Plaintiff] has finally been fully approved for gender confirming surgeries" because of the delays at least in part associated with Defendant's conduct at issue here," she has not received any such care." It specifies Defendant caused "detrimental effects to [Plaintiff]s progression in her transition." It specifies that she is, because of the conduct, "permanently incont[inent]." The damages from the rapes — and their full extent, whatever it turns out to be — are clearly contemplated within the SF-95 and the SF-95 provides such notice. If Defendant wanted more notice of specific diagnoses (as opposed to the "amount of the claim"), it could have easily sent Plaintiff to appropriate treatment sooner.

To the extent there are deeper fact disputes here, these are easily addressed questions about what testimony about damages comes in at trial — not an argument that any claim should be dismissed.

### IV. Defendant is Wrong There is Any Ambiguity About the Timeframe.

Last, while Defendant asserts there is "ambiguity in the Complaint" about the time range it covers, there is not. The Complaint is very specific that — because Defendant purported to find some ambiguity in the SF-95 in its response — "information from outside the statute of limitations is provided not as an independent cause of action but (1) as relevant background or (2) as, where relevant, part of ongoing harms or for negligence claims that either (a) did not accrue until later because of when harm took place or (b) were part of a concealed harm." ECF No. 1 ¶ 28 n.3

As ever, I thank the Court for its time and consideration.



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



Respectfully submitted,

/s/
_____

J. Remy Green
    *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Plaintiff*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by ECF.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com